S05A1950. MURRAY COUNTY et al. v. R&J MURRAY, LLC.

(627 SE2d 574)

SEARS, Chief Justice.

The Murray County Superior Court granted R&J Murray, LLC ("R&J") a writ of mandamus compelling Murray County (the "County") to verify to the Georgia Environmental Protection Division ("EPD") that R&J's proposed landfill was consistent with the County's Solid Waste Management Plan ("SWMP"). The County appeals. Because the County did not abuse its discretion by considering factors other than land use and environmental factors to determine that the proposed landfill was inconsistent with its SWMP, the trial court improperly granted summary judgment and a writ of mandamus to R&J. Accordingly, we reverse and remand.

In 2002, R&J first proposed building a Construction and Demolition ("C&D") landfill on 398 acres it owned in Murray County. Under OCGA § 12-8-24 (g), before R&J could obtain a permit to build and operate a landfill from the EPD, it first had to obtain written verification from the County that its proposed landfill did not violate any zoning or land use ordinances and was consistent with the County's SWMP.[1] The County responded to R&J's initial proposal, by letter, stating that the proposed C&D landfill, which would be restricted to the disposal of construction and demolition waste, was consistent with its zoning ordinances and its SWMP. R&J amended its request multiple times, however, and eventually asked the County to verify that an unrestricted Municipal Solid Waste ("MSW") landfill was also consistent with the County's SWMP.

The County refused to verify that the proposed MSW landfill was consistent with its SWMP, claiming that an unrestricted MSW landfill would cause more environmental harm than the originally proposed C&D landfill, and that the proposed landfill, owing to economic factors as well as its geographic proximity to the County's existing landfill, would render the County unable to continue operating its existing landfill. Due to land and geological limitations, the County's SWMP states that the County will rely exclusively on its existing MSW landfill until at least 2030. The County found that the proposed landfill would interfere with the expansion of the existing landfill necessary to achieve that goal, due to statutory restrictions on landfill density.[2] In addition, the County concluded that the proposed landfill would render the County financially unable to continue operating its existing landfill, contrary to the SWMP, and that by increasing the waste stream into the County, the County would be

---

[1] *ENRE Corp. v. Wheeler County*, 274 Ga. 17 (549 SE2d 67) (2001).

[2] OCGA § 12-8-25.4.

unable to meet its waste reduction goals.[3] The County thus concluded that the proposed MSW landfill was inconsistent with its SWMP, and it refused to issue the requested verification to the EPD. R&J then filed suit in the Superior Court, seeking a writ of mandamus to compel the County to issue the required verification to the EPD.

The trial court found that in making its decision, the County had considered factors that it was prohibited from considering under *Butts County v. Pine Ridge Recycling*.[4] In that decision, the Court of Appeals ruled that under OCGA § 12-8-31.1 (b), a local government can only consider environmental and land use factors in making its determination regarding a proposed landfill's consistency with its SWMP.[5] After eliminating the purportedly improper factors from consideration, such as the County's waste reduction goals, the trial court in this case concluded that the environmental and land use factors cited by the County did not justify its decision. Accordingly, the trial court found that the County's decision constituted an abuse of discretion, and granted a writ of mandamus compelling the County to issue the requested verification.[6]

Because we find that the comprehensive statutory and regulatory scheme applicable to landfill applications and SWMP development does not evidence an intent to so restrict local governments in their decision-making, we hereby overrule the decision in *Butts County*. An examination of the applicable statutes and regulations clearly reveals that local governments are authorized, and indeed required, to consider factors other than environmental and land use factors in developing a SWMP. In the absence of legislative restrictions on local governments' consistency decisions, then, we find that a local government is authorized to consider any relevant factor in determining whether a proposed facility is consistent with its SWMP that it properly considered in the SWMP itself.

In 1990, the General Assembly passed the Georgia Comprehensive Solid Waste Management Act ("Act") in order to:

> protect the health, safety, and well-being of its citizens and to protect and enhance the quality of its environment, to institute and maintain a comprehensive state-wide program

---

[3] The County also found that the unrestricted MSW landfill would create numerous negative environmental effects, including the spread of foul odors from trucks transporting sewage sludge through the most populated portions of the County.

[4] 213 Ga. App. 510 (445 SE2d 294) (1994).

[5] Id. at 512.

[6] "Mandamus is an extraordinary remedy and is available against a public official only when the petitioner shows a clear legal right to the relief sought or a gross abuse of discretion." *Mid-Georgia Environmental Mgmt. Group v. Meriwether County*, 277 Ga. 670, 672-673 (594 SE2d 344) (2004).

for solid waste management . . . so as to assure that solid waste does not adversely affect the health, safety, and well-being of the public and that solid waste facilities, whether publicly or privately owned, do not degrade the quality of the environment by reason of their location, design, method of operation, or other means and which, to the extent feasible and practical, makes maximum utilization of the resources contained in solid waste.[7]

An important part of the statutory scheme is the requirement that each city and county develop or participate in a SWMP.[8] Then, when a new solid waste facility is proposed, the applicant must request written verification from the local government that the proposed facility is consistent with the SWMP.[9] After receiving written verification from the local government, the applicant may then request a permit from the director of the EPD.[10]

The *Butts County* decision, as well as the decision by the trial court in this case, is based on the language of OCGA § 12-8-31.1 (b). That statute directs each city and county to develop a SWMP, and declares that "at a minimum," every SWMP shall (1) "provide for the assurance of adequate solid waste handling capability and capacity within the planning area for at least ten years . . . ," (2) "enumerate the solid waste handling facilities as to size and type," and (3) "identify those sites which are not suitable for solid waste handling facilities based on environmental and land use factors."[11] The statute does not state that only environmental and land use factors may be addressed in the SWMP, nor does it address how local governments are to determine whether a proposed facility is consistent with its SWMP.[12] In fact, the plain language of the statute indicates that factors other than the "minimum" land use and environmental factors might be considered.

Although OCGA § 12-8-31.1 (b) provides the "minimum" factors that must be considered in a SWMP, OCGA § 12-8-31.1 (a) also requires a valid SWMP to "conform to the plan development procedures developed and promulgated by the Department of Community

---

[7] OCGA § 12-8-21 (a).
[8] OCGA § 12-8-31.1.
[9] OCGA § 12-8-24 (g).
[10] OCGA § 12-8-24 (a).
[11] OCGA § 12-8-31.1 (b).
[12] OCGA § 12-8-24 (g) directs local governments to determine whether proposed facilities are consistent with the SWMP, but contains no language indicating an intent to restrict that determination through the use of any particular factors.

Affairs."[13] The regulations issued by the DCA, which "shall be used to guide the preparation, development, and review of all local government solid waste management plans,"[14] make clear that a local government is not limited in its SWMP to consideration of environmental and land use factors. For example, the regulations require a valid SWMP to include a procedure for determining whether a proposed facility is consistent with the SWMP.[15] "At a minimum," and among other things, the procedure for determining consistency "shall address . . . (ii) the anticipated impact the proposed facility will have upon current solid waste management facilities, [and] (iii) the anticipated impact the proposed facility will have on collection and disposal capability within the planning area."[16]

The County in this case focused on precisely these factors, among others, when it determined that the proposed landfill would render the County unable to continue to operate the existing landfill, as envisioned by its SWMP. If the *Butts County* decision were correct, and OCGA § 12-8-31.1 (b) limited the factors that could be considered in a consistency determination, then these regulatory requirements are meaningless.

The applicable statutes and regulations clearly show that local governments are authorized to consider factors other than environmental and land use factors in developing a SWMP. The plain language of OCGA § 12-8-24 (g) then authorizes local governments to determine whether a proposed facility is consistent with its SWMP, but does not restrict the local government to consideration of only certain factors within its SWMP. It would be wrong to conclude, absent specific restrictions, that the legislature intended local governments to consider a variety of factors in developing its SWMP, but intended to allow local governments to consider only two limited factors in determining whether a proposed facility was consistent with that SWMP. The General Assembly plainly chose not to impose such restrictions on local governments in their consistency determinations. Thus, in determining whether a proposed facility is consistent with its SWMP, a local government is authorized to consider any relevant factor that it appropriately considered in the SWMP itself.

[13] The DCA regulations are used to determine the validity of a SWMP. Ga. Comp. R. & Regs. r. 110-4-3-.03 (2) (f).

[14] Ga. Comp. R. & Regs. r. 110-4-3-.01 (2) (c).

[15] The regulations also impose upon the local government the duty to "[t]ake all action necessary or desirable to implement the approved and adopted comprehensive solid waste management plan." Ga. Comp. R. & Regs. r. 110-4-3-.03 (4) (c).

[16] Ga. Comp. R. & Regs. r. 110-4-3-.04 (5) (d) (3). A valid SWMP must also "address the following five core planning elements . . . waste disposal stream analysis, waste reduction, collection, and disposal, land limitation, education and public involvement, and an implementation schedule." Ga. Comp. R. & Regs. r. 110-4-3-.04 (2) (a).

We do note, however, that local governments are not authorized to consider factors that do not promote the "health, safety, and well-being" of their citizens, protect the quality of the environment, or otherwise further the purposes of the Georgia Comprehensive Solid Waste Management Act. For example, nothing in the regulatory or statutory scheme authorizes local governments to develop a SWMP or deny certification for a proposed facility based on the desire by the local government to monopolize the waste management business. Because that kind of bare economic protectionism does not further the goals of the Act, it is not a proper basis for denying certification or developing a SWMP. R&J argues that the County denied its certification in this case solely for this reason, but the trial court has never made that factual determination, and it would be improper for this Court to do so on appeal.

The *Butts County* decision improperly restricts a local government to consideration of only environmental and land use factors in its determination of a proposed facility's consistency with its SWMP. Instead, a local government is authorized to consider any relevant factor that it properly considered in developing its SWMP, as defined by the statutory and regulatory scheme. Because the trial court's determination that the County abused its discretion was based on its finding that the County considered factors it was prohibited from considering under *Butts County*, we reverse and remand for proceedings consistent with this opinion.

*Judgment reversed. All the Justices concur.*

HUNSTEIN, Presiding Justice, concurring.

I agree with the majority opinion that under the facts in this appeal the County was not restricted in its decision-making authority to consideration of land use and environmental factors. I write separately, however, to emphasize two points. First, the County's authority to consider other relevant factors in reviewing plan consistency emanates from the absence of any restrictive language or procedure in its 2002 SWMP, a plan which is inconsistent with current DCA Minimum Planning Standards and Procedures. DCA Rule 110-4-3-.04 (5) (d) (3), effective January 1, 2004, requires a SWMP to

specify a procedure the local government(s) will follow to determine if a proposed facility, public or private, is consistent with the plan. At a minimum, the procedure shall address

(i) how the public will be involved and notified;

(ii) the anticipated impact the proposed facility will have upon current solid waste management facilities;

   (iii) the anticipated impact the proposed facility will have upon adequate collection and disposal capability within the planning area; and

   (iv) the effect the facility will have upon waste generated within the state achieving the States 25% per capita waste disposal reduction goal.

Minimum Planning Standards and Procedures, Ga. Comp. R. & Regs. r. 110-4-3-.04 (5) (d) (3). While the absence of such a procedure in the County's 2002 SWMP demonstrates its inconsistency with current regulations, at the time the County's plan was approved such a procedure was not required under DCA regulations. Appellants have not challenged the validity of the County's SWMP or its seemingly unfettered discretion to determine whether a proposed solid waste facility is consistent with the plan. Accordingly, those issues are not before us in this appeal.

   Second, I agree with the majority opinion that the *Butts County* decision must be overruled. In that case, the Court of Appeals applied OCGA § 12-8-31.1 (b), a statute requiring that a plan "identify those sites which are not suitable for solid waste handling facilities based on environmental and land use factors," and concluded that Butts County was restricted to consideration of environmental and land use factors in determining whether a proposed facility was consistent with the county's solid waste management plan. *Butts County v. Pine Ridge Recycling*, 213 Ga. App. 510, 512 (445 SE2d 294) (1994). Although the factors in OCGA § 12-8-31.1 (b) are applicable with regard to the issue of site suitability, the issue before the Court of Appeals in *Butts County* was whether the proposed facility was consistent with Butts County's SWMP. The Court of Appeals confused site suitability with plan consistency, which require separate determinations under the Solid Waste Management Act and related Minimum Standards and Procedures for Solid Waste Management Regulations promulgated by the DCA. See OCGA § 12-8-24 (g) (requiring verification that proposed facility complies with local zoning and land use ordinance and is consistent with applicable solid waste management plan before issuance of permit); OCGA § 12-8-31.1 (b) (plan shall identify those sites that are not suitable for solid waste handling facilities); Minimum Planning Standards and Procedures, Ga. Comp. R. & Regs. r. 110-4-3-.04 (5) (d) (1) ("Land Limitation Element," requiring plan to include assessment and map identifying areas which, due to environmental limitations or land use factors are unsuitable for solid waste disposal facilities); id. at (5) (d) (3) ("Plan Consistency," requiring plan to include procedure for determining consistency with plan). In this case, the County correctly recognized the separate determinations and issued letters to appellees stating

that the proposed facility constituted an "allowable use on the subject property," i.e., was suitable for the selected site, but denied that the proposed landfill is consistent with the County's SWMP.

DECIDED MARCH 13, 2006.

*Smith, Gambrell & Russell, Stephen E. O'Day, Shannan F. Oliver, Gregory H. Kinnamon,* for appellants.
*Wilson, Brock & Irby, Richard W. Wilson, Jr., Robert M. Hoyland,* for appellee.