S07A0833. R&J MURRAY, LLC v. MURRAY COUNTY et al.
(653 SE2d 720)

BENHAM, Justice.

This appeal is the second appellate appearance of litigation in which R&J Murray, LLC (hereinafter R&J) seeks a writ of mandamus requiring verification from Murray County that a proposed landfill is consistent with the county's Solid Waste Management Plan (SWMP).[1] In the first appellate appearance of this litigation, *Murray County v. R&J Murray, LLC*, 280 Ga. 314 (627 SE2d 574) (2006) (hereinafter *Murray County*), this Court reversed the grant of summary judgment in favor of R&J because the trial court, in reliance on *Butts County v. Pine Ridge Recycling*, 213 Ga. App. 510 (445 SE2d 294) (1994), had limited the county to consideration of only environmental and land use factors in determining whether a proposed facility was consistent with the SWMP. Overruling *Butts County*, we ruled that "in its determination of a proposed facility's consistency with its SWMP[,] . . . a local government is authorized to consider any relevant factor that it properly considered in developing its SWMP, as defined by the

---

[1] In order to obtain from the Department of Natural Resources a permit for the construction and operation of a landfill, the applicant for the permit must provide, among other items, a letter from the jurisdiction in which the landfill would be sited verifying the consistency of the proposed facility with the jurisdiction's SWMP. OCGA § 12-8-24 (g). For a discussion of the consistency verification process generally and how it applies to the present case, see *Murray County v. R&J Murray, LLC*, 280 Ga. 314 (627 SE2d 574) (2006).

statutory and regulatory scheme." *Murray County*, supra, 280 Ga. at 318. On remand from that decision, the trial court granted summary judgment to Murray County, concluding its denial of verification of R&J's proposal was supported by evidence regarding relevant factors properly considered in developing Murray County's SWMP and was, therefore, not an abuse of discretion such as would support the grant of mandamus relief.[2] This appeal is from that judgment.

1. R&J's first assertion on appeal, that it is entitled to the verification it seeks because denial of verification burdens a vested property right, is based on R&J's claim the proposed facility was verified in 2002 as consistent with the SWMP. The record shows, however, the purported verification was a letter which did not comply with the requirements for a letter of verification set forth in Georgia Department of Natural Resources Rule 391-3-4-.02 (10). In addition to containing no verification of the consistency of the proposed facility with the SWMP, the letter on which R&J relies did not demonstrate, as the rule requires, that Murray County is actively involved in and has a strategy for meeting the State-wide goal of waste reduction. Accordingly, R&J's argument on this issue, being without support in the record, has no merit.

2. One of the six items listed by Murray County in informing R&J the proposed landfill was inconsistent with the county's SWMP was that the SWMP sets forth a disposal strategy for Murray County and the cities of Chatsworth and Eton based on using the single existing landfill and expansions thereof until at least the year 2030. In granting summary judgment, the trial court pointed to evidence in the record establishing that the one-landfill strategy was based in part on the costs associated with the siting, design, construction, operation, closure, and post-closure maintenance of the landfill; that those costs are interrelated with the costs of collection and waste reduction; that the financing necessary to meet those costs is dependent on having a waste stream sufficient to generate the necessary revenue; and that development of an additional landfill in the county might render the existing landfill financially unable to continue operations. The trial court noted that the sustainability of a landfill is related to the protection, health, and safety of persons and furthers the purposes of the Georgia Comprehensive Solid Waste Management Act (OCGA § 12-8-20 et seq.), and that the financing of solid waste management was a factor included in Murray County's SWMP. Based on this Court's holding in *Murray County* that those were proper factors to be con-

---

[2] "Mandamus is an extraordinary remedy and is available against a public official only when the petitioner shows a clear legal right to the relief sought or a gross abuse of discretion." *Mid-Georgia Environmental Mgmt. Group v. Meriwether County*, 277 Ga. 670, 672-673 (594 SE2d 344) (2004).

sidered in a consistency determination, the trial court held that Murray County had not committed an abuse of discretion in finding R&J's proposed facility inconsistent with Murray County's SWMP.

In *Murray County*, this Court held that applicable regulations required the county to consider in its consistency determination "the anticipated impact the proposed facility will have upon current solid waste management facilities," and recognized Murray County had done so in this case. Thus, the trial court was correct in its application on remand of our holding in *Murray County*. Our review of the record shows the trial court was also correct in its holding that evidence of record supports the conclusions regarding the one-landfill strategy set out above.

R&J contends the regulations requiring consideration of the anticipated impact the proposed facility will have upon current solid waste management facilities do not apply to the present case because Murray County's SWMP was adopted prior to the promulgation of the regulation requiring that factor be considered in determining consistency. R&J is correct that Murray County's SWMP was adopted under the 1994 "Minimum Planning Standards" and that the rule to which this Court made reference in *Murray County*, Ga. Comp. R. & Regs. r. 110-4-3-.04 (5) (d) (3), was adopted in 2003, but we cannot agree with R&J's argument that the county is limited in its consistency determination to the factors listed in the former rule. The holding there was that "in determining whether a proposed facility is consistent with its SWMP, a local government is authorized to consider any relevant factor that it appropriately considered in the SWMP itself." *Murray County*, supra at 317. Since factors related to the financial support of the Murray County landfill were considered in the SWMP, they were properly considered in making the determination that R&J's proposed facility would be inconsistent with the SWMP.[3]

Finally, R&J contends the trial court should have found that Murray County's determination that R&J's proposed facility is inconsistent with the SWMP was based on economic protectionism, citing this Court's holding in *Murray County*, supra at 318, that

> nothing in the regulatory or statutory scheme authorizes local governments to develop a SWMP or deny certification for a proposed facility based on the desire by the local government to monopolize the waste management business.

---

[3] Because the issue is not presented in this case, we express no opinion on the propriety of using in a consistency determination factors set out in the current rules but not included in a SWMP predating the current rules.

Because that kind of bare economic protectionism does not further the goals of the Act, it is not a proper basis for denying certification or developing a SWMP. R&J argues that the County denied its certification in this case solely for this reason, but the trial court has never made that factual determination . . . .

The trial court has now ruled on that issue, rejecting R&J's argument that construing the SWMP to exclude new landfills from Murray County constituted economic protectionism violative of the Commerce Clause of the United States Constitution. We agree with the trial court's conclusion. As the U. S. Supreme Court noted in upholding a law favoring government-owned waste disposal facilities, "laws favoring local government may be directed toward any number of legitimate goals unrelated to protectionism." *United Haulers Assn. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, ___ U. S. ___ (127 SC 1786, 167 LE2d 655) (2007). Here, the provision in the SWMP for a one-landfill strategy, though based on economic considerations, is established in the record as being directed toward legitimate goals unrelated to protectionism. Contrary to R&J's arguments, there is no evidence of record suggesting that adoption of the one-landfill strategy was motivated by a desire to monopolize the waste management business.

The evidence of record supports Murray County's determination that R&J's proposed facility is inconsistent with the one-landfill strategy set out in the SWMP, and the factors leading to that determination were properly considered in the SWMP. Thus, the standard established in *Murray County* was met with regard to that determination.[4] Accordingly, we conclude the trial court was correct in holding no abuse of discretion by Murray County was shown, and in awarding summary judgment to Murray County.

*Judgment affirmed. All the Justices concur, except Melton, J., who concurs specially.*

MELTON, Justice, concurring specially.

In determining whether a proposed solid waste facility is consistent with its Solid Waste Management Plan (SWMP), a local government is authorized to consider any relevant factor that it appropriately considered in its SWMP. *Murray County v. R&J Murray, LLC*, 280 Ga. 314, 315 (627 SE2d 574) (2006). The economic effect of a new facility on a local government's profits from its own pre-existent

---

[4] Since that one determination establishes the inconsistency of the proposed facility with Murray County's SWMP, we need not consider the correctness of the other bases for the determination of inconsistency.

facility, however, is not such a relevant factor. Under the Georgia Comprehensive Solid Waste Management Act (Act), relevant factors should be those which impede or advance the Act's explicitly stated goals — protection of public health, safety, or well-being and the quality of the environment. In this case, Murray County abused its discretion to the extent that it based its determination that R&J Murray's proposed landfill was inconsistent with the SWMP simply because it would create economic competition for the County's pre-existing landfill. On the other hand, Murray County also properly considered the negative environmental impact the proposed landfill would have on Murray County's highways and wetlands. Because Murray County's decision to reject R&J Murray's proposal was not wholly based on economic protectionism, I concur in the judgment of the majority.

The Act was passed specifically for three purposes: (1) to protect the "health, safety, and well-being" of Georgia citizens; (2) to protect the quality of Georgia's environment; and (3) to create a "comprehensive state-wide program for solid waste management." OCGA § 12-8-21 (a). The comprehensive state-wide program, in turn, has three stated purposes of its own: (1) to assure that all solid waste does not "adversely affect the health, safety, and well-being of the public"; (2) to assure solid waste facilities do not denigrate the "quality of the environment by reason of their location, design, method of operation, or other means"; and (3) to assure, "to the extent feasible and practical," maximum utilization is made of the resources contained in solid waste. Id. In other words, the purpose of the comprehensive state-wide program is to assure the goals of the Act — protection of public health and the environment.

In order to further these same goals at the local level, the Legislature required the creation of individual solid waste management plans throughout Georgia localities. OCGA § 12-8-31.1 (a). "The legislature has provided that solid waste management planning by the State, local governments, and Regional Development Centers within the State is necessary to prevent environmental degradation, to manage resources, and to effectively reduce and manage solid waste for the State and its residents." DCA Rule 110-4-3-.01 (3). At a minimum, each local plan must: (1) assure "adequate solid waste handling and capability and capacity within the planning area for at least ten years"; (2) "enumerate the solid waste facilities as to size and type"; and (3) "identify those sites which are not suitable for solid waste handling facilities based on environmental and land use factors." By requiring localities to identify the needed capacity of solid waste handling, the type of facilities in existence, and suitable areas

for future solid waste facilities, the Legislature advanced the goals of the Act by forcing localities to currently plan for future waste management needs.

Because local plans are inextricably tied to the Act as the mechanism by which the Act is essentially set into motion, the creation, implementation, and enforcement of such plans must be considered in light of the explicit purposes underlying the Act, namely protection of public health from the accumulation of solid waste and the preservation of the quality of the environment from the effects of solid waste facilities. A local plan should be enforced in a manner to foster these goals, as they form the reason that the local plans were required in the first place.[5] The directive of the Legislature is respected if local plans are implemented for these purposes. On the other hand, a local plan should not be enforced to accomplish goals important solely to a local government which have no direct relevance to the public health or preservation of the environment.

In this case, the County explicitly stated that one of the reasons that it refused to certify the proposed facility was because it would create economic competition for the County's waste management facility, and, in its plan, the County had determined that only it would be allowed to operate any such facility within its borders. In essence, through its local plan and its enforcement, the County argues that it should be allowed to wholly monopolize waste management for 30 years into the future. This reasoning, however, bears no direct relation to the preservation of the quality of environment, as stated in the Act as its goal regarding waste management facilities. To the contrary, it bears only on the fiscal health of the locality and its individual facility, a consideration irrelevant to the underlying goals of the Act. Nothing in the Act or related statutes would authorize or espouse any such monopoly unless perhaps it were absolutely required for the protection of the environment.[6] There is no evidence in this case that there was such a requirement. Therefore, the County abused its discretion in considering this factor.

Although such "bare economic protectionism does not further the goals of the Act . . . and is not a proper basis for denying certification or developing a SWMP," *Murray County*, supra at 318, the trial court

---

[5] Indeed, both the Environmental Protection Division and the Department of Community Affairs, the governmental bodies charged with overseeing the implementation of the Act, are charged with the responsibility to "protect the health, safety, and well-being of [Georgia's] citizens and to protect and enhance the quality of [Georgia's] environment." DCA Rule 110-4-3-.03 (2), (3).

[6] Although a local government may consider "the anticipated impact [a] proposed facility will have upon current waste management facilities," I do not believe that the Legislature ever intended that the Act could be interpreted to allow individual counties to wholly shut down the free enterprise marketplace for waste management. DCA Rule 110-4-3-.04 (5) (d) (3).

has now made the factual determination that certification was not denied solely for this reason. Instead, the trial court found that Murray County also denied R&J Murray's request for certification because the construction of its proposed landfill would negatively impact the environment by unduly increasing traffic on a county highway and by causing the filling of wetlands. Both of these bases have a direct relation to protection of the environment, one of the underlying rationales for the Act, and they provide valid grounds for Murray County's determination that R&J Murray's proposed landfill was not consistent with the existing SWMP. Accordingly, the trial court properly granted summary judgment to Murray County.

DECIDED NOVEMBER 21, 2007 —<br>RECONSIDERATION DENIED DECEMBER 13, 2007.

*Gambrell & Stolz, Robert M. Hoyland, Robert G. Brazier, Steven G. Hall, Seaton D. Purdom*, for appellant.

*Gregory H. Kinnamon, Smith, Gambrell & Russell, Stephen E. O'Day, Christopher J. Bowers*, for appellees.